IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AIRRION Y., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:22CV815 |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Airrion Y. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on August 23, 2019, alleging a disability onset date of March 2, 2019 in both applications. (Tr. at 17, 218-23, 226-35.)[2] His

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

applications were denied initially (Tr. at 58-87, 106-14) and upon reconsideration (Tr. at 88-101, 116-31). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 132-33.) On June 10, 2021, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 17.) At the hearing, Plaintiff noted that he had returned to work and amended his application to a closed period of disability from March 2, 2019 through April 12, 2021. (Tr. at 37.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 25), and, on July 29, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 3-8).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may

2

be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be
3

be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).³

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

³ "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, Plaintiff had returned to work by the time of the hearing, and he amended his application to a closed period of disability from March 2, 2019 through April 12, 2021. (Tr. at 17, 37.) The ALJ found that Plaintiff had not engaged in "substantial gainful activity" during that period. The ALJ therefore concluded that Plaintiff met his burden at step

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

5

one of the sequential evaluation process. (Tr. at 19.) At step two, the ALJ further determined that Plaintiff suffered from two severe impairments:

> degenerative disc disease of the lumbar and cervical spine with vitamin B12 deficiency[.]

(Tr. at 20.) The ALJ found at step three that neither of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 20.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with further limitations. Specifically, the ALJ found as follows:

> [Plaintiff] can stand and walk four (4) hours total in an eight hour workday; sit six (6) hours total in an eight hour workday; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; tolerate frequent exposure to vibrations and hazards; and, requires use of a single cane to ambulate and stand.

(Tr. at 20-21.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that all of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 23.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 24-25.)

Plaintiff now contends that in formulating the RFC assessment, the ALJ failed to properly evaluate the medical opinion of Plaintiff's treating provider, Dr. Michael Goulet. Under the applicable regulations for claims filed on or after March 27, 2017,

> [The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings

6

from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .

(1) <u>Supportability.</u> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) <u>Consistency.</u> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) <u>Relationship with the claimant.</u> . . . [which includes]: (i) Length of the treatment relationship. . . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . . [and] (v) Examining relationship. . . .

(4) <u>Specialization.</u> The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) <u>Other factors.</u> . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . .

20 C.F.R. § 404.1520c(a), (c) (emphases added). The regulations also require decision-makers to "articulate in [their] decision[s] how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Although all of the factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c should be considered in making this determination, the regulations specifically provide that the most important factors when evaluating the persuasiveness of an opinion are the first two: supportability and consistency.

20 C.F.R. § 404.1520c(a), (c)(1)-(2). "Supportability" refers to "the objective medical evidence and supporting explanations presented by [the] medical source [] to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the opinion's consistency "with the evidence from <u>other</u> medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2) (emphasis added).

> Here, as set out in the administrative decision,
>
> [Dr. Goulet] completed a "Physical Assessment" [in September 2019], wherein he opined [that Plaintiff's] attention and concentration would frequently be interfered with; and, that he was only capable of walking 1.5 blocks without rest or significant pain, sitting 6 hours total in a workday, standing/walking 1 hour total in a workday, and lifting up to 10 pounds occasionally but never more. Dr. Goulet opined [Plaintiff] needs to take unscheduled breaks once an hour for 10 minutes at a time and would likely be absent once or twice a month as a result of his impairments or treatments. (1F).

(Tr. at 22.) The ALJ ultimately found Dr. Goulet's opinions unpersuasive, noting that the "evidence does not support the restrictive limitations in his 'Physical Assessment.'" (Tr. at 23.) The ALJ contrasted Dr. Goulet's opinion with the opinion of the Consultative Examiner Dr. Lifrak, and found that the opinion of Dr. Lifrak was supported by a thorough examination and objective findings. (Tr. at 23.) The ALJ stated that he was "persuaded by Dr. Lifrak's opinions" but was "not persuaded by the opinions of Dr. Goulet." (Tr. at 23.) The ALJ further explained that "[t]here is no objective evidence, or even subjective reports from [Plaintiff], to support a finding [that Plaintiff] requires breaks every hour, that his attention and focus is affected by his pain, and that he would be absent more than once or twice a month, with additional restrictions on standing, walking, and sitting." (Tr. at 23.)

Plaintiff now argues that the ALJ's explanation was insufficient under 20 C.F.R. § 404.1520c. In particular, Plaintiff contends that the ALJ failed to specifically address the

8

consistency and supportability of Dr. Goulet's opinion, as required by 20 C.F.R. § 404.1520c(b)(2), which dictates that the ALJ "will explain" how the consistency and supportability factors were considered in the decision. (Pl.'s Br. at 9.) Plaintiff further argues that the ALJ impermissibly substituted his own opinions for those of Dr. Goulet.

In considering these contentions, the Court notes that the ALJ's decision must include a sufficient discussion of the relevant factors to allow for judicial review, and a simple review of the record as a whole cannot rectify an error under 20 C.F.R. § 404.1520c(b)(2). As expressed in a recent decision,

> [an ALJ's] failure to articulate the consistency factor in his evaluation of [the physician's] opinion constitutes error. See 20 C.F.R. § 404.1520c(b)(2). This court cannot "fill in the blanks for the ALJ" by finding substantial evidence supports the ALJ's evaluation of [an] opinion when the ALJ did not even address the consistency factor, nor may the court "bolster inconclusive findings" when the ALJ did not discuss the extent to which [the physician's] opinion was either consistent or inconsistent with the evidence in the record. See Patterson[ v. Comm'r of Soc. Sec. Admin.], 846 F.3d [656,] 662 [(4th Cir. 2017)]. Absent any explanation by the ALJ whether [the medical] opinion was consistent or inconsistent with the record, this court cannot meaningfully review how the ALJ evaluated the persuasiveness of [the] opinion and whether substantial evidence supports the ALJ's determination.

Cantrell v. Kijakazi, No. 2:21cv00021, 2022 WL 3335778, at *10 (W.D. Va. Aug. 12, 2022) (internal brackets omitted). Nevertheless, there is no requirement that an ALJ use any "magic words" in making findings regarding consistency and supportability. See Weidner v. Kijakazi, No. 20-1250-MN, 2022 WL 610702, at *12 (D. Del. Feb. 1, 2022) (finding the fact that the ALJ did not use "consistency" or "supportability" is not sufficient to remand where the "ALJ plainly considered the consistency of the medical opinions with the evidence of record"). Thus, the ALJ's failure to follow a specific format is inapposite, so long as he (1) analyzed the

9

relevant factors when considering the persuasiveness of the medical opinion and (2) made his analysis clear enough for the court to meaningfully review it.

Here, with regard to supportability, as set out above, in finding Dr. Goulet's opinion unpersuasive, the ALJ contrasted Dr. Goulet's opinion with the opinion of the Consultative Examiner Dr. Irwin Lifrak. The ALJ specifically found that the opinion of Dr. Lifrak was "supported by a thorough examination of [Plaintiff] and objective findings." (Tr. at 23.) The ALJ then stated that, in contrast, "this evidence does not support the restrictive limitations" in Dr. Goulet's opinion form. (Tr. at 23.) Thus, the ALJ specifically found that Dr. Goulet's Physical Assessment was not supported by a thorough examination or by objective findings. This conclusion is supported by the record, which reflects Dr. Goulet's opinion form on September 11, 2019 (Tr. at 340-41), and a record of an office visit on September 11, 2019, reflecting "Patient here for forms to be filled" (Tr. at 402), but without the type of thorough examination and objective findings reflected in Dr. Lifrak's consultative examination, and without any treatment records reflecting prior examination or treatment by Dr. Goulet. (Tr. at 402-03, 421-29). In addition, the ALJ then further explained that "[t]here is no objective evidence, or even subjective reports from [Plaintiff], to support a finding [that Plaintiff] requires breaks every hour, that his attention and focus is affected by his pain, and that he would be absent more than once or twice a month, with additional restrictions on standing, walking, and sitting." (Tr. at 23.) Thus, the ALJ concluded that Dr. Goulet's opinion was not

10

Case 1:22-cv-00815-JEP   Document 15   Filed 03/08/24   Page 10 of 13

supported by a thorough examination, by objective evidence, or even by Plaintiff's own subjective statements.[5]

The ALJ similarly addressed the issue of consistency with the remainder of the record and the other opinion evidence and non-opinion evidence. First, as noted above, the ALJ specifically contrasted the opinions of Dr. Goulet and Dr. Lifrak. (Tr. at 23.) In addition, as noted by the ALJ, there was no other objective evidence in the record or subjective reports by Plaintiff to support Dr. Goulet's opinions regarding breaks, attention and focus, absences, and additional restrictions on standing and walking. (Tr. at 23.) Finally, in the next sentence after considering the lack of support for Dr. Goulet's opinion, the ALJ further noted Plaintiff's activities of daily living, specifically that he was "able to care for children and his personal care and grooming needs, prepare meals, do light household chores, handle finances, read, watch TV, learn, attend family and friend gatherings, attend Bible study, follow instructions, concentrate, remember things, complete tasks, get along with authority figures, handle stress, and handle changes in routine," as well as his "conservative treatment during the relevant period" and his "overall benign findings on physical examinations." (Tr. at 23.) Thus, with respect to consistency, the ALJ contrasted Dr. Goulet's opinion with Dr. Lifrak's opinion, with the objective evidence, with Plaintiff's subjective complaints, with Plaintiff's activities of

---

[5] Indeed, Dr. Goulet opined that Plaintiff could only stand for one hour during an 8-hour work day, but Plaintiff told Dr. Lifrak he could "stand for a total period of 2 to 3 hours out of an 8-hour day." (Tr. at 340, 426.) Similarly, Dr. Goulet opined that Plaintiff could only occasionally lift 10 pounds and could never lift over 10 pounds, but Plaintiff reported to Dr. Lifrak that he could lift 20 to 25 pounds with his right hand and 15 pounds with his left hand. (Tr. at 340, 426.) Dr. Goulet's opinion did not include any subjective reports from Plaintiff or objective basis for his conclusions, and substantial evidence supports the ALJ's conclusion on supportability, specifically that "[t]here is no objective evidence, or even subjective reports from [Plaintiff], to support [Dr. Goulet's] finding [that Plaintiff] requires breaks every hour, that his attention and focus is affected by his pain, and that he would be absent more than once or twice a month, with additional restrictions on standing, walking, and sitting." (Tr. at 23.)

11

daily living, with his conservative treatment, and with the findings on physical examinations. From this discussion, the Court can clearly discern the ALJ's meaning without "filling in the blanks," and the ALJ's explanation and analysis are sufficient to allow for judicial review.

Plaintiff also argues that some of Dr. Goulet's findings were consistent with those of the consultative examiner, Dr. Lifrak. However, the ALJ incorporated the consistent findings, including Plaintiff's diminished ability to stand, walk, and lift, when assessing his RFC. As explained in the administrative decision, the ALJ only discounted Dr. Goulet's unsupported and inconsistent findings that Plaintiff required additional limitations such as breaks every hour, multiple absences a month, restrictions to account for attention and focus difficulties, standing and walking no more than an hour in a workday, and lifting no more than 10 pounds occasionally. (Tr. at 22-23.) Plaintiff points to no evidence in Dr. Goulet's treatment notes or otherwise to support such extreme limitations, and none are apparent from a review of the record.

While Plaintiff disagrees with the ALJ's evaluation of Dr. Goulet's opinion, Plaintiff is essentially asking the Court to reconsider the decision and re-weigh the opinion evidence and come to a different conclusion than the ALJ. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff]

12

is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, including the opinion evidence from Dr. Goulet, explained his decision, including with respect to both supportability and consistency, and that explanation is supported by substantial evidence in the record. Accordingly, the Court finds no basis for remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #12] is DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 8th day of March, 2024.

/s/ Joi Elizabeth Peake
United States Magistrate Judge